GAIL KRUPP *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

LOISELLE, BOGDANSKI, LONGO, SPEZIALE and HEALEY, Js.

Argued February 9—decision released June 13, 1978

*Lester Katz,* for the appellant (plaintiff).

*Thomas J. Daley,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Donald E. Wasik,* assistant attorney general, for the appellee (named defendant).

LONGO, J. The plaintiff, Gail Krupp, has appealed to this court from the judgment of the Superior Court dismissing her appeal from the decision of the unemployment compensation commissioner for the first district. The following facts are disclosed by the record: The plaintiff worked for the University of Connecticut as an instructor in English during the contract year of September, 1970, to September, 1971. Her contract was not renewed for the 1971–1972 school year. She filed an initiating claim for unemployment compensation benefits for the period of September 5, 1971, to October 2, 1971.

On October 8, 1971, a claims examiner supervised by the defendant administrator disapproved her claim indefinitely, apparently on the ground that the nature of her prior employment with the University of Connecticut made her ineligible by reason of some provision in General Statutes § 31-222 (a) (5). The plaintiff promptly appealed to the commissioner on October 13, 1971, but was not granted a hearing until March 14, 1973. On June 25, 1974, more than two and one-half years after the plaintiff filed her appeal, the commissioner rendered a decision wherein he reversed the administrator and found the plaintiff eligible for benefits, but only for the one-month period covered by her initiating claim, September 5 to October 2, 1971.

The plaintiff appealed to the Superior Court and also moved the commissioner to correct his finding and award in several respects, among them the addition of findings to the effect that she remained eligible for benefits from October, 1971, to September, 1972, at which time, as a result of her efforts to find work, she was hired as an instructor in English by Tunxis Community College for the 1972–1973 school year. Despite an order of the trial court the plaintiff's motion to correct the finding and award was not acted upon until February 28, 1977, when the chief appeals referee[1] granted the plaintiff's motion in full. Subsequently, on March 9, 1977, the referee reversed his prior decision in part and denied so much of the plaintiff's motion

[1] Public Acts 1974, No. 74-339, which took effect July 1, 1974, made fundamental changes in unemployment compensation procedures, among them the replacement of unemployment compensation commissioners by a two-tier appellate system consisting of a referee section and a board of review. With the exception of the chief appeals referee's disposition of the plaintiff's motion, Public Act No. 74-339 has no application to the proceedings in this case.

as declared her eligible for benefits from October, 1971, to September, 1972. The plaintiff's appeal to the Superior Court was dismissed on the ground that although the unemployment compensation procedures were "woefully dilatory and inadequate," the plaintiff had failed to prove her eligibility for benefits beyond October 2, 1971.

The plaintiff principally complains that the long and unexplained delay of approximately 1000 days from the taking of her appeal to the commissioner's decision on June 25, 1974, denied her right to payment of benefits "when due" as required by the federal Social Security Act, and that the delay violated her due process rights under the fourteenth amendment to the United States constitution. In Connecticut, unemployment compensation benefits are paid out of a trust fund maintained by the contributions of employers in the state. General Statutes §§ 31-261–31-271. Pursuant to § 302 of the federal Social Security Act; 42 U.S.C. § 502; the costs of administering the fund are paid by the federal government so long as the state program meets federal statutory requirements. Section 303 (a) (1) of the Social Security Act; 42 U.S.C. § 503 (a) (1); provides that the methods of administration must be "reasonably calculated to insure full payment of unemployment compensation when due." It is the plaintiff's contention that a delay of approximately 1000 days in providing a hearing and a decision on the question of her initial eligibility violated her right to payment "when due."

This claim requires us to examine closely the precedents established by a series of United States Supreme Court decisions: *California Department of Human Resources Development* v. *Java*, 402

U.S. 121, 91 S. Ct. 1347, 28 L. Ed. 2d 666 (1971);
*Torres* v. *New York State Department of Labor,* 405
U.S. 949, 92 S. Ct. 1185, 31 L. Ed. 2d 228 (1972),
rehearing denied, 410 U.S. 971, 93 S. Ct. 1446, 35
L. Ed. 2d 707; and *Fusari* v. *Steinberg,* 419 U.S.
379, 95 S. Ct. 533, 42 L. Ed. 2d 521 (1975). In *Java,*
the court reviewed the legislative history of the
Social Security Act and concluded (p. 131) that
" 'when due' was intended to mean at the earliest
stage of unemployment that such payments were
administratively feasible after giving both the
worker and the employer an opportunity to be
heard." Accordingly, the court held that the federal
requirement of payment "when due" was violated
by the California practice of automatic suspension
of benefits for a median period of seven weeks
pending resolution of an employer's appeal, after
an initial determination of eligibility had been made.

The case of *Torres* v. *New York State Department
of Labor,* supra, had a complex history, reviewed in
the opinion of the United States District Court in
*Steinberg* v. *Fusari,* 364 F. Sup. 922, 930–31
(D. Conn.). For our purposes it suffices to say that
on remand from the Supreme Court for reconsidera-
tion in the light of *Java,* the District Court recon-
sidering *Torres* adhered to its original decision that
the payment "when due" requirement was not vio-
lated by the New York practice of suspending unem-
ployment benefits without a prior hearing on the
basis of an administrative determination made at
an interview with the claimant. The District Court
reasoned that benefits could not be said to be due
when an administrative official had determined that
they were not due, and distinguished *Java* on the
ground that the California practice of automatic
suspension of benefits did not allow for a prior

administrative determination. *Torres* v. *New York State Department of Labor,* 333 F. Sup. 341, 344 (S.D. N.Y.). This decision was summarily affirmed by the Supreme Court. *Torres* v. *New York State Department of Labor,* 405 U.S. 949, 92 S. Ct. 1185, 31 L. Ed. 2d 228.

*Fusari* v. *Steinberg,* supra, was a class action challenging the legality of Connecticut's procedures for determining continuing eligibility for benefits. In that case, the plaintiffs contended that both due process and the "when due" requirement of 42 U.S.C. § 503 (a) (1) were violated by lengthy delays in deciding appeals to compensation commissioners from examiners' decisions to terminate benefits, especially in view of the substantial reversal rate on appeal. Among the District Court's findings were that the reversal rate ranged from 19.4 percent to 26.1 percent during the periods surveyed, and that 89.8 percent of the appeals filed in a representative month required more than 100 days to decide. *Steinberg* v. *Fusari,* 364 F. Sup. 922, 934, 937 (D. Conn.). Although the District Court expressed serious doubts whether Connecticut practice satisfied the requirement of payment "when due," it felt precluded from so holding by the United States Supreme Court's summary affirmance in *Torres.* "The summary affirmance would thus seem to stand for the proposition that payments are not 'due' until a hearing is held and someone says they are." Id., 937. The District Court found *Torres* to be distinguishable on the due process question, however, and enjoined the administrator from terminating unemployment benefits through existing procedures without first providing a constitutionally adequate hearing. Id., 937–38. At the administrator's request the District Court stayed its injunc-

tion pending resolution of an appeal to the Supreme Court. The Supreme Court noted probable jurisdiction in 1974. *Fusari* v. *Steinberg*, 415 U.S. 912, 94 S. Ct. 1406, 39 L. Ed. 2d 466.

Following the Supreme Court's notation of probable jurisdiction, the General Assembly enacted major amendments to the procedures for determining unemployment compensation claims. Public Acts 1974, No. 74-339. The United States Supreme Court concluded that the 1974 amendments might significantly affect the speed and fairness of the resolution of contested claims. It therefore vacated and remanded the decision of the District Court for reconsideration in light of the intervening changes in Connecticut law. *Fusari* v. *Steinberg*, 419 U.S. 379, 380, 95 S. Ct. 533, 42 L. Ed. 2d 521.

The Supreme Court endorsed the District Court's reasoning on the due process issue, but rebuked the District Court in somewhat enigmatic terms for a too narrow reading of the payment "when due" requirement.[2] The Supreme Court's pronouncement stands at the very least for the proposition that in

---

[2] "The District Court interpreted our summary affirmance in *Torres* to indicate that benefits are not 'due' under § 303 until administratively deemed payable. . . . .[*Steinberg* v. *Fusari*, 364 F. Sup. 922, 930 (D. Conn.)]. While this is a plausible reading of the evolution and affirmance of *Torres*, it is not one that we can endorse. Such a definition of the 'when due' requirement of federal law would leave little vitality to *Java* and would nullify the congressional intention of requiring prompt administrative provision of unemployment benefits. See . . . [*California Department of Human Resources Development* v. *Java*, 402 U.S. 121, 130–33, 91 S. Ct. 1347, 28 L. Ed. 2d 666]. By reading our summary affirmance in *Torres* at its broadest, the District Court heightened the tension between that judgment and our more considered disposition of *Java*. A narrower interpretation of *Torres* would have been appropriate. Any statutory requirement that embodies notions of timeliness, accuracy, and administrative feasibility inevitably will generate fact-specific applications." *Fusari* v. *Steinberg*, 419 U.S. 379, 388 n.15, 95 S. Ct. 533, 42 L. Ed. 2d 521.

some "fact-specific applications" of the payment "when due" statutory requirement, the lack of an administrative determination of eligibility does not necessarily mean that payments are not due for the period in question. In reaching a decision, we are directed by the Supreme Court to consider "timeliness, accuracy, and administrative feasibility" in the light of the particular circumstances presented.

Turning to the facts of this case, we find that the plaintiff appealed to the commissioner from an examiner's denial of her initiating claim rather than from an examiner's decision to discontinue benefits. This is a distinction without a difference. *Steinberg* teaches that "[t]he basic thrust of the statutory 'when due' requirement is timeliness." *Fusari* v. *Steinberg*, 419 U.S. 379, 388–89, 95 S. Ct. 533, 42 L. Ed. 2d 521. The plaintiff was as entitled to a timely appellate determination of her initiating claim as the *Java* and *Steinberg* claimants were entitled to timely resolution of their appeals from the discontinuance of benefits. By any stretch of the imagination, a delay of 1000 days cannot be regarded as timely. The record does not indicate that the long delay was offset significantly either by the accuracy of the procedures used to disapprove the plaintiff's initiating claim or by considerations of administrative feasibility impeding a prompt appellate decision.

We conclude, therefore, that the plaintiff was denied her right to "full payment of unemployment compensation when due," as required by 42 U.S.C. § 503 (a) (1). See *Pascua* v. *Hodgson*, 1A CCH Unemployment Ins. Rptr. ¶ 21, 474, where the District Court for the northern district of California held that federal employees who were terminated

from their employment were entitled under 42 U.S.C. § 503 (a) (1) to a prompt determination of their eligibility for state unemployment compensation, and enjoined the California practice of withholding an eligibility determination pending the outcome of the claimants' federal administrative appeals.

The plaintiff argues that because she was unemployed from September, 1971, to September, 1972, "full payment" in this case means payment for the entire year in question. The defendant's response is that the plaintiff failed to persuade the commissioner and the trial court that she retained her eligibility beyond October 2, 1971, in that from that time on apparently she did not report biweekly to the local unemployment compensation office as required by General Statutes § 31-235 and by the defendant's regulations, and did not pursue employment in teaching and other fields as vigorously as she should have.

We assume without deciding that federal law would not have been violated in this case if the plaintiff had been required to report biweekly and to demonstrate her continuing eligibility in all other respects pending a timely determination by the commissioner whether the nature of her prior employment as a teacher with the University of Connecticut disqualified her for unemployment compensation. Such a procedure would have served the state's interest in paying benefits retroactively to qualified claimants only, and it would have afforded the plaintiff an opportunity to learn what was expected of her. We also assume, arguendo, that if the plaintiff had been sufficiently notified of the reporting requirement but did not make reasonable

efforts to comply, such noncompliance would preclude the claim that the defendant's dilatoriness outweighed and excused her own failure to continue reporting. It is of great importance, however, that the meager record in this case does not unequivocally establish that the plaintiff was promptly and adequately notified that she had to continue to report in order to protect her entitlement to benefits accruing during the pendency of her administrative appeal. It is important as well that the record supports the plaintiff's contention that during her year of unemployment she searched for another teaching position and eventually succeeded. The essence of the reporting requirement in § 31-235 of the General Statutes, proof of availability for work and reasonable efforts to find work, appears to have been satisfied.

We conclude that an award of benefits for the year in question is necessary to do justice under the particular circumstances of this case, namely, the extraordinary delay in deciding the plaintiff's administrative appeal, the insufficiency of notice to the plaintiff of her obligation to report, the basis for disapproval of the plaintiff's initiating claim, and the plaintiff's commitment to the search for employment as indicated by the record. In view of the great weight given in *Java* and *Steinberg* to speed and fairness in the administrative process, this set of circumstances must be deemed to constitute "good cause" pursuant to General Statutes § 31-235 (1) for suspending the reporting requirement. A remand to the chief appeals referee will be required for the limited purpose of determining the benefits due to the plaintiff for each week of total or partial unemployment pursuant to the provisions of General Statutes §§ 31-228 and 31-229.

There is error, the judgment is set aside, and the case is remanded for the rendition of a judgment returning the case to the chief appeals referee of the employment security appeals division with direction to make an award of benefits to the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.